```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
SUSANNA FRANK WILDE,

                Plaintiff,         OPINION

        -against-                  07 Civ. 0677 (WHP)


PETER NORMAN WILDE,

                Defendant.

----------------------------------X

APPEARANCES:

        LEBOW & SOKOLOW, L.L.P.
        Attorneys for Plaintiff
        770 Lexington Avenue
        Sixth Floor
        New York, New York 10021

        By:  Evan Whitney Gray, Esq.

        LAW OFFICES OF CARL E. PERSON, ESQ.
        Attorneys for Defendant
        325 West 45th Street
        Suit 201
        New York, New York 10036

        By:  Carl E. Person, Esq.
```

**Cedarbaum, J.**

Susanna Wilde sues for restitution from her stepson Peter Wilde for his misappropriation of her property by misuse of certain powers of attorney. Susanna Wilde asks the court to impose a constructive trust on property she has traced, order an

1

equitable accounting, and award any additional equitable remedies the court deems just.

By agreement with Judge Pauley, I conducted a bench trial of this action on June 2 and 3, 2008. Susanna Wilde, Peter Wilde, and Tomás Wilde testified as witnesses. A Spanish interpreter was also present, although all witnesses were fluent in English and testified in English. Before trial, the parties had agreed on almost all of the material facts in the case. The dispute centered on the scope of the powers of attorney given to Peter Wilde.

**I. Facts**

After examining the evidence, observing the witnesses who testified in the courtroom, and considering the credibility and plausibility of their testimony, I make the following findings of fact.

Susanna Wilde, a citizen of Germany and long-term resident of Colombia, married Guido Wilde in Colombia in 1965. Guido Wilde had three children from a previous marriage: Eleanora Wilde, Tomás Wilde, and Peter Wilde. Eleanora Wilde was murdered in Colombia in 1992. Tomás Wilde is a citizen and resident of Colombia. Peter Wilde moved from Colombia to the United States around 1977 and has lived in Virginia Beach, Virginia, since that time. He is self-employed and operates his business, Service Technicians, Inc. ("STI"), from his home in Virginia Beach.

On January 10, 2003, Guido Wilde died. No will was offered for probate.

**A. The powers of attorney**

Susanna and Guido Wilde granted specific powers of attorney to Peter Wilde with regard to checking and investment accounts at Citibank in New York City (the "Citibank Accounts"). Susanna and Guido Wilde owned the accounts jointly with rights of survivorship. Susanna and Guido Wilde also granted Peter Wilde a general power of attorney, which he used in connection with a

condominium in Juno Beach, Florida (the "Florida Condominium"). Susanna and Guido Wilde had purchased the condominium jointly in 1994 and owned it as tenants by the entirety.

**1. Power of attorney with respect to the Citibank Accounts**

On June 1, 1982, Susanna and Guido Wilde, using a standard Citibank form, granted Peter Wilde and Tomás Wilde powers of attorney over their Citibank Accounts.  On May 14, 1990, Susanna and Guido Wilde revoked the 1982 powers of attorney and granted powers of attorney over the Citibank Accounts solely to Tomás Wilde.

On May 21, 1996, Susanna Wilde, Guido Wilde, and Tomás Wilde granted powers of attorney over the Citibank Accounts to Peter Wilde.  Susanna Wilde, Guido Wilde, and Tomás Wilde each designated Peter Wilde as attorney-in-fact and made him "my legal representative to deal with or through Citibank ... in my name as fully as I could do it myself.  This authority extends to dealings for my individual accounts or any of my joint accounts." The 1996 power of attorney also stated:

> I give my attorney full authority to do anything, orally or in writing, he or she considers necessary and proper to conduct this business even if it is for the attorney's own benefit, all as if I were personally doing it.  I approve everything that my attorney ... has done or shall do in carrying out these instructions.

4

The 1996 power of attorney provided that it was governed by New York law.

In or around 2001, two additional boilerplate Citibank power-of-attorney forms were executed by Susanna and Guido Wilde. The first granted Peter Wilde power of attorney with respect to the Citibank Accounts, and the second granted Tomás Wilde power of attorney with respect to the Citibank Accounts. The wording of these grants was substantially the same as the wording of the 1996 power of attorney.

The 1996 and 2001 powers of attorney stated that "[a]ny power delivered to Citibank, N.A. and not clearly marked as a revocation and/or substitution for a previous one will be treated as an additional power." Therefore Peter Wilde could control the Citibank Accounts pursuant to both the 1996 power of attorney and the 2001 power of attorney.

### 2. General powers of attorney

On October 4, 1983, Susanna Wilde and Guido Wilde executed three general powers of attorney in favor of Peter Wilde: one by Susanna Wilde individually, one by Guido Wilde individually, and one by Susanna and Guido Wilde jointly. The 1983 powers of attorney were prepared and executed in Virginia Beach, Virginia. Under all three of the 1983 powers of attorney, Guido Wilde and Susanna Wilde appointed Peter Wilde as their "true and lawful attorney," with the power, among other things, to sue for and receive money on their behalf, to sign bonds, deeds, and obligations, to endorse promissory notes, to draw upon their bank accounts, "even though such acts or proposed acts include the withdrawal of all funds in said accounts," and to sell any "real or personal estate, or any interest" therein, "in the State of Virginia or elsewhere."

## B. The Citibank Accounts

As discussed above, Susanna and Guido Wilde were joint owners with rights of survivorship of a checking account and an investment account, with funds in fixed income securities, at Citibank. Susanna and Guido Wilde placed a "hold mail" on the Citibank Accounts and traveled to New York a few times each year to meet with Citibank representatives to review their account statements.

In or about May of 1996, Guido Wilde broke his hip in an accident. At that time, Susanna Wilde was suffering from severe depression and was receiving treatment at a psychiatric institution. As a result, Susanna and Guido Wilde could no longer visit the United States. They asked Peter Wilde to obtain copies of the Citibank Accounts and bring them to Bogotá about twice a year.

5

During this time, Susanna and Guido Wilde also transferred their Bogotá apartment to Tomás Wilde and, in exchange, he assumed their living expenses.  Susanna and Guido Wilde continued to reside in the apartment, and Susanna Wilde resides there today.  Peter and Tomás Wilde had the following arrangement to take care of Guido and Susanna Wilde's expenses:  Peter Wilde would transfer funds from the Citibank Accounts to Tomás Wilde's Banco Santander account in Colombia.  Tomás Wilde would then convert the funds to Colombian pesos and use the money to cover Susanna and Guido Wilde's expenses.

The Citibank Accounts became the sole property of Susanna Wilde upon the death of her husband.  Tomás Wilde continued to take care of Susanna Wilde's expenses after Guido Wilde's death.

In March of 1996, the Citibank Accounts had a value of $1,764,173.19.  In May of 1996, Peter Wilde began drawing checks on Susanna and Guido Wilde's Citibank checking account for his own benefit.  Peter Wilde has failed to disclose the checks he wrote for his own benefit from May of 1996 through April 11, 1998.  From April 12, 1998 through December 16, 2004, Peter Wilde wrote checks on the Citibank checking account totaling $1,642,134.43.  Of that amount, $132,000 was wired to Tomás Wilde for the benefit and maintenance of Susanna and/or Guido Wilde. The remainder, $1,510,134.43, was withdrawn for Peter Wilde's own benefit.

In December of 2004, Citibank contacted Tomás Wilde to ask whether he was aware of the significant withdrawals from the Citibank checking account, the liquidation of investments in the Citibank investment account to cover overdrafts in the checking account, and the fact that the balance of the Citibank Accounts had shrunk to $435,000.  Neither Tomás nor Susanna Wilde had been aware of any of these facts.

On December 15, 2004, Tomás and Susanna Wilde instructed Citibank to stop all payments on the Citibank Accounts and revoked the powers of attorney granted to Peter Wilde with respect to the Citibank Accounts.  Peter Wilde's last successful withdrawal was on December 16, 2004:  a $4,000 check paid to his company, STI.

**C. The Florida Condominium and the North Carolina Property**

In April of 1994, Susanna and Guido Wilde purchased a condominium apartment in Juno Beach, Florida, as tenants by the entirety.  As a result of Guido Wilde's broken hip and Susanna Wilde's treatment for depression, Susanna and Guido Wilde were unable to use the Florida Condominium in 1996.  Without informing Susanna or Guido Wilde, Peter Wilde arranged for the rental of the condominium to third parties, starting on May 1 of 1996.  He continued renting the Florida Condominium through May 31, 2000.

6

Peter Wilde admits to collecting the rent money and also admits that he never deposited the money into Susanna and Guido Wilde's accounts at Citibank. However, neither side has submitted any evidence regarding how much rental income was generated.

During June of 1996, Peter Wilde transferred the Florida condominium to Pink Jade Investments, a Cayman Islands corporation. In connection with the transfer, he filed the 1983 powers of attorney with the Palm Beach County Clerk. On May 8, 2000, Peter Wilde caused the Florida condominium to be transferred from Pink Jade to Guido Wilde, using the Florida Condominium as Guido Wilde's address. On May 15, 2000, Peter Wilde, in Guido Wilde's name as his attorney-in-fact, sold the condominium to a third party for $172,000. The deed provided a mailing address for Guido Wilde, but it was Peter Wilde's home address in Virginia Beach. At no time did Peter Wilde disclose the existence of any of these transactions to Guido or Susanna Wilde.

Peter Wilde admits that in June of 2000, he used the proceeds of the May 2000 sale of the Florida Condominium, along with additional funds from the Citibank Accounts, to purchase real property in Frisco, North Carolina (the "North Carolina Property"). He purchased this property in the name of Guido Wilde. Peter Wilde then transferred a 5% undivided interest in the North Carolina property to himself by deed of gift dated June 4, 2001, and later transferred a 95% undivided interest to himself by deed of gift dated September 18, 2002. The value of the North Carolina Property as of August 22, 2007, was $365,800.

Peter Wilde rented the North Carolina Property to third parties from May 1, 2000 through March 11, 2008. He received at least $82,433.12 in rental checks from August 9, 2000 through February 1, 2008. He deposited these checks in bank accounts that he controlled.

Susanna Wilde also introduced evidence that Peter Wilde's actual rental income was higher than he admitted. The 2002 portion of the rental income, according to Peter Wilde's admission, is $10,470. However, he paid taxes on $16,210 of rental income on his 2002 income tax return. Therefore, the total amount of rental income generated by the North Carolina Property may be greater than $82,433.12.

After the commencement of this action, Peter Wilde transferred the North Carolina Property to his wife Linda by deed of gift. On December 4, 2007, Peter and Linda Wilde were enjoined on consent from transferring the North Carolina Property pending entry of final judgment in this case.

**D. Tracing the withdrawals from the Citibank Accounts**

7

Susanna Wilde attempted, during discovery, to obtain documents and information from Peter Wilde regarding the funds he withdrew from the Citibank Accounts. On June 30, 2007, Peter Wilde produced a Declaration and Accounting which listed checks by payee from April 12, 1998, to December 16, 2004, and which provided the basis for Plaintiff's Exhibit 125 (a list of checks drawn by Peter Wilde on the Citibank checking account). However, only the payees were listed; the Declaration and Accounting did not identify the property, goods, or services which were being purchased. In his Declaration and Accounting, Peter Wilde wrote that his bank records were lost on August 3, 2004, in Hurricane Alex, and that his "post-Hurricane Alex records for this account appear to be lost."

Susanna Wilde was able to trace a fraction of the $1,510,134.43 known to have been withdrawn from the Citibank Accounts for Peter Wilde's personal use. I find her tracing to be accurate and credible. Peter Wilde spent Susanna Wilde's money on improvements to the North Carolina Property, improvements to his home, payments on his own home mortgage, utilities, insurance premiums, and property taxes, the purchase of a condominium in St. Thomas, loans made to STI, other expenditures on behalf of STI, and the purchase of two cars and several pieces of jewelry. A detailed discussion of the tracing appears in Part II.D below.

## II. DISCUSSION
**A. Breach of fiduciary duty**

The Citibank form powers of attorney provide that New York law shall govern. The 1983 powers of attorney do not contain a choice of law provision. To determine what law to apply, New York courts use a "center of gravity" approach, looking to the place of contracting, the place of negotiation and performance, the location of the subject matter, and the domicile of the contracting parties. Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317 (1994). The 1983 powers of attorney were drafted and executed in Virginia, were granted by Colombia residents to a Virginia resident, and were used in Virginia, Florida, and North Carolina. The "center of gravity" of the 1983 powers of attorney is therefore Virginia, and Virginia law will govern.

Treatment of the various powers of attorney, however, is the same under both Virginia and New York law. New York courts impose fiduciary duties on attorneys-in-fact. In re Estate of Ferrara, 7 N.Y.3d 244, 254 (2006); In re Culbreth, 48 A.D.3d 564, 564 (2d Dep't 2008); Marszal v. Anderson, 9 A.D.3d 711, 712-13 (3d Dep't 2004). A power of attorney "'is clearly given with the intent that the attorney-in-fact will utilize that power for the benefit of the principal.'" Ferrara, 7 N.Y.3d 244, 254 (2006) (quoting Mantella v. Mantella, 268 A.D.2d 852, 852 (3d Dep't 2000)). "Because '[t]he relationship of an attorney-in-fact to his principal is that of agent and principal ..., the attorney-in-fact must act in the utmost good faith and undivided loyalty toward the principal, and must act in accordance with the highest principles of morality, fidelity, loyalty and fair dealing.'" Ferrara, 7 N.Y.3d at 254 (quoting Semmler v. Naples, 166 A.D.2d 751, 752 (3d Dep't 1990)). An attorney-in-fact owes the same fiduciary duty to his principal under Virginia law. Grubb v. Grubb, 272 Va. 45, 53 (2006); Nicholson v. Shockey, 192 Va. 270, 278 (1951) (describing the fiduciary duty as a "high standard of good faith and loyalty").

"'[A]bsent a specific provision in the power of attorney document authorizing gifts, an attorney-in-fact, in exercising his or her fiduciary responsibilities to the principal, may not make a gift to himself or a third party of the money or property which is the subject of the agency relationship.'" In re Estate of Masterson, 46 A.D.3d 1091, 1092 (3d Dep't 2007) (quoting Marszal, 9 A.D.3d at 712-13). See also Grubb, 272 Va. at 53 ("[A]ny transaction involving [the principal's] assets that [the attorney-in-fact] consummated to his own benefit while acting as her fiduciary is presumptively fraudulent."). "'Such a gift carries with it a presumption of impropriety and self-dealing, a

9

presumption which can be overcome only with the clearest showing of intent on the part of the principal to make the gift.'" Masterson, 46 A.D.3d at 1092 (quoting Semmler, 166 A.D.2d at 752). See also Grubb, 272 Va. at 53 ("When a presumption of constructive fraud arises, the burden of proof shifts to the fiduciary to produce clear and convincing evidence to rebut the presumption.").

    Peter Wilde contends that he was authorized, under the various powers of attorney he had been granted, to make withdrawals from the Citibank Accounts and to rent and sell the Florida Condominium for his own benefit. He further argues that Susanna, Guido, and Tomás Wilde consented to these activities by failing to object to his actions. Finally, he asserts that everything he took was compensation for his services, by which he means his help in transferring funds to Tomás Wilde to cover the living expenses of Susanna and Guido Wilde. All of these contentions lack merit.

    The 1983 powers of attorney contain no language that could be construed as authorizing Peter Wilde to make a gift to himself. The 1996 and 2001 Citibank powers of attorney grant the "full authority to do anything, orally or in writing, he or she considers necessary and proper to conduct this business even if it is for the attorney's own benefit." That is not a "specific provision ... authorizing gifts." Masterson, 46 A.D.3d at 1092. Although that language allows Peter Wilde to make transfers that might benefit him, such transfers must be "necessary and proper" for the conduct of Susanna and Guido Wilde's business. It was not "necessary and proper" for their business to have Peter Wilde take more than one and a half million dollars of their money. In sum, Peter Wilde was not authorized to make the gifts he made to himself under the 1983, 1996, or 2001 powers of attorney.

    Peter Wilde did not proffer any credible evidence to show that Susanna, Guido, or Tomás Wilde consented to his withdrawals. Susanna and Tomás Wilde testified credibly that they had no knowledge of Peter Wilde's transfers from the Citibank Accounts. They failed to object, therefore, not out of tacit approval, but because they did not know that the transfers were being made. Peter Wilde's testimony that Susanna, Guido, and Tomás Wilde were aware of the withdrawals was not credible.

    Finally, there is no basis for the assertion that the transfers were compensation for services that Peter Wilde performed. No provision in any of the powers of attorney discusses compensation, and Peter Wilde has proffered no other agreement indicating such an arrangement. See In re Estate of Naumoff, 301 A.D.2d 802, 804 (3d Dep't 2003) ("Where parties are related, 'it is presumed that the services were rendered in consideration of love and affection, without expectation of

payment.'" (quoting In re Estate of Wilson, 178 A.D.2d 996, 997 (4th Dep't 1991))).

By withdrawing for his own use at least $1,510,134.43 from the Citibank Accounts and by renting and selling for his own benefit the Florida Condominium, Peter Wilde violated his fiduciary duty to Susanna Wilde.

**B. Choice of law regarding equitable remedies**

Both parties have made arguments as to the choice of law governing the 1983 powers of attorney. However, neither party has argued that any state law other than New York's governs the equitable remedies to be applied in this action. Susanna Wilde has relied almost exclusively on New York law in her discussion of remedies. Peter Wilde does not discuss the law of remedies at all. Therefore, the parties have given implied consent for New York law to be applied. Tehran-Berkeley Civil & Envtl. Eng'rs v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 242 (2d Cir. 1989); Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 52-53 (2d Cir. 1984).

**C. Unjust enrichment**

An early and much cited New York case described unjust enrichment as "an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it.... Duty, and not a promise or agreement or intention of the person sought to be charged, defines it." Miller v. Schloss, 218 N.Y. 400, 407 (1916). See also Paramount Film Distrib. Corp. v. State, 30 N.Y.2d 415, 421 (1972) ("The essential inquiry in any action for unjust enrichment or restitution is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered."). To prevail on a claim of unjust enrichment, "a plaintiff must establish that the defendant benefitted at the plaintiff's expense and that equity and good conscience require restitution." Whitman Realty Group, Inc. v. Galano, 41 A.D.3d 590, 593 (2d Dep't 2007).

By withdrawing funds from Susanna Wilde's Citibank Accounts and renting and selling Susanna Wilde's Florida Condominium, Peter Wilde violated his fiduciary duty and was unjustly enriched. Peter Wilde owes a duty of restitution to Susanna Wilde for the full amount of his unjust enrichment. That amount, however, cannot be finalized until there is an equitable accounting.

Susanna Wilde seeks the additional remedies of a constructive trust and an equitable accounting. It is useful to

distinguish the three remedies. An award of restitution for unjust enrichment is a money judgment in personam, not linked to any particular asset. Restatement (Third) of Restitution and Unjust Enrichment § 51 cmt. b (T.D. No. 5, 2007). The constructive trust, in contrast, is an asset-based remedy. The seeker of the remedy must trace the missing funds to particular assets. Once this is done, the beneficiary of the constructive trust has a claim over the assets in trust that is paramount to all other creditors. Id. Equitable accounting does not have a tracing requirement. 1 Dobbs, Law of Remedies § 4.3(1) (2d ed. 1993) ("Unlike the [constructive] trust, ... [equitable] accounting does not seek any particular res or fund of money; the defendant will be forced to yield up profits, but the defendant can pay from any monies he might have, not some special account."); see also Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214 n.2 (2002) (citing Dobbs). In an equitable accounting, the defendant must show what benefits were derived from the use of plaintiff's property.

The total amount of restitution cannot be determined until Peter Wilde provides Susanna Wilde with an equitable accounting.

**D. Constructive trust**

A constructive trust may be imposed on property belonging to and traceable to the principal but possessed by the agent, where the agent "'may not in good conscience retain the beneficial interest.'" Sharp v. Kosmalski, 40 N.Y.2d 119, 121 (1976) (quoting Beatty v Guggenheim Exploration Co., 225 N.Y. 380, 386 (1919)). See also Indep. Coal & Coke Co. v. United States, 274 U.S. 640, 647 (1927); United States v. Benitez, 779 F.2d 135, 140 (2d Cir. 1985). The requirements for a constructive trust are a confidential or fiduciary relationship, an express or implied promise, a transfer in reliance thereon, and unjust enrichment. Sharp, 40 N.Y.2d at 121-22. "A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." Beatty, 225 N.Y. at 390; see also Counihan v. Allstate Ins. Co., 194 F.3d 357, 361 (2d Cir. 1999).

Here, all of the factors required for imposition of a constructive trust are present. Peter Wilde has unjustly enriched himself in violation of his fiduciary duty to Susanna Wilde and his implied promise to carry out his power of attorney for her benefit. Thus, property in Peter Wilde's control that Susanna Wilde has traced will be placed under a constructive trust, allowing Susanna Wilde to recover the property. This includes any property that Peter Wilde transferred to his wife, who does not qualify as an innocent third party. Mantella v. Mantella, 268 A.D.2d 852, 852-53 (3d Dep't 2000) (attorney-in-

fact's transfer of principal's property to himself and his wife is null and void).

The party seeking to impose a constructive trust must "trace one's equitable interest to identifiable property in the hands of the purported constructive trustee," but "in view of equity's goal of softening where appropriate the harsh consequences of legal formalisms, in limited situations the tracing requirement may be relaxed." Rogers v. Rogers, 63 N.Y.2d 582, 586 (1984). It is appropriate to relax the tracing requirements where a fiduciary has breached his duty. Martha Graham Sch. and Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc., 224 F. Supp. 2d 567, 609-12 (2002), aff'd in relevant part, 380 F.3d 624, 646 (2d Cir. 2004). See also Simonds v. Simonds, 45 N.Y.2d 233, 240 (1978) (tracing requirements relaxed in family dispute regarding life insurance policy).

When misappropriated funds are commingled with other funds, either in an account or through purchase of property, the constructive trust extends only to the portion traceable to the misappropriated funds. Bank Leumi Trust Co. of New York v. Klein, 92 Civ. 2016, 1993 WL 403967, at *6 (S.D.N.Y. Oct. 7, 1993) (citing cases); Mid-Valley Produce Corp. v. 4-XXX Produce Corp., 833 F.Supp. 193, 196 (E.D.N.Y. 1993); Restatement (First) of Restitution § 210 (1937). When a constructive trust extends only to a portion of the property, it is generally known as an equitable lien. Restatement (First) of Restitution §§ 210, 161 cmt. a; Restatement (Third) of Restitution § 56; 1 Dobbs, Law of Remedies § 4.3(1) & (3).

Susanna Wilde has credibly traced funds from the Citibank Accounts and the sale of the Florida Condominium to the following property:

**1. The Virginia Beach Home**

Peter Wilde received a mortgage of $54,781.95 on his home in Virginia Beach (the "Virginia Beach Home") on November 20, 2000. Between January 7, 2001, and June 3, 2004, Peter Wilde used the Citibank Accounts to make payments on the mortgage totaling $34,437.11.

On May 7, 2001, Peter Wilde obtained a home equity line of credit from Bank of America in the amount of $25,000. Peter Wilde made payments to the Bank of America credit line totaling $90,157.66 in funds taken directly or indirectly from the Citibank Accounts. Peter Wilde paid an additional $77,974.86 to Bank of America from the Citibank Accounts, but Susanna Wilde could not trace those payments to the mortgage or the home equity line.

The payments to the home equity line are not properly traceable to the Virginia Beach Home. Payments to a home equity

13

line of credit, unlike payments on a mortgage, do not build equity in one's home.  The funds paid to the home equity line passed through the line of credit en route to purchasing other items.  For instance, check 890, in the amount of $11,800, was written from the Citibank checking account to the Bank of America line of credit.  Susanna Wilde argues that that $11,800 should therefore be traced to the Virginia Beach Home.  However, Susanna Wilde also argues that Peter Wilde bought property on St. Thomas (discussed below) in part with money from the home equity line of credit, funded in turn by check 890 from the Citibank checking account.  Susanna Wilde therefore attempts to count check 890 twice, as a payment from the Citibank Accounts to the Virginia Beach Home and as a payment from the home equity line of credit to the St. Thomas condominium.  For the purposes of the constructive trust, the funds removed from the Citibank Accounts and run through the Bank of America home equity account must be traced to their ultimate destination in order for a constructive trust to be imposed.

Between July of 2000 and December of 2004, Peter Wilde paid $41,322.63 in taxes, utilities, and insurance premiums for the Virginia Beach Home.  These payments were made from four accounts owned by Peter Wilde, including the home equity line of credit, all of which were funded by withdrawals from the Citibank Accounts.

Susanna Wilde has therefore traced $34,437.11 in mortgage payments and $41,322.63 in payments for taxes, utilities, and insurance.  An equitable lien in the amount of at least $75,759.74 will therefore be attached to the Virginia Beach Home in favor of Susanna Wilde.

Peter Wilde has admitted that he paid for improvements to the Virginia Beach Home with funds derived directly or indirectly from the Citibank Accounts.  Following the equitable accounting, the additional amount of Peter Wilde's expenditures on the Virginia Beach Home from the Citibank Accounts will be added to the lien.

### 2. The Florida Condominium and the North Carolina Property

As discussed above, Peter Wilde sold the Florida Condominium and used the proceeds, with added funds from the Citibank Accounts, to purchase the North Carolina Property.  Therefore, a constructive trust in favor of Susanna Wilde will be imposed on the North Carolina Property.

Peter Wilde's personal financial statement of August 22, 2007, lists personal property worth $5,930 at the North Carolina Property.  Susanna Wilde seeks to extend the constructive trust to include this personal property.  Without further information

14

about the personal property, I decline to extend the constructive trust to include it.

### 3. The St. Thomas Condominium

Peter Wilde purchased a condominium on the island of St. Thomas (the "St. Thomas Condominium"). Susanna Wilde traced her funds to this property in the following manner. She produced the contract of sale for the condominium, prepared by Sauter & Associates. The contract was dated April 20, 2002. The purchase price was $50,000. Susanna Wilde next produced checks from four different bank accounts written by Peter Wilde shortly before April 20, 2002, payable to Sauter & Associates. These four checks totaled $40,000. The checks were written from four different bank accounts: Peter Wilde's Bank of America equity credit line, Peter and Guido Wilde's Cenit Bank Account, Peter Wilde's personal Bank of America account, and a Bank of America account held jointly by Peter Wilde and his son. Susanna Wilde credibly traced a chain of deposits totaling $27,500 from the Citibank Accounts to these four accounts.

Peter Wilde received rental income from the St. Thomas Condominium from May 1, 2002 through March 11, 2008, including at least $22,696.54 in checks paid by Antilles Resort Management, Inc. Peter Wilde deposited these checks in bank accounts under his control. He has not disclosed the full amount of rental income that he received from this property.

In March of 2007, two months after Susanna Wilde commenced this action, Peter Wilde sold the St. Thomas Condominium for $200,000. The proceeds were deposited in an account at Banco Popular de Puerto Rico in the name of Peter and Linda Wilde. On December 11, 2007, Peter Wilde and his wife were enjoined on consent from disposing of any funds in the Banco Popular account. At that time, only $9,859.19 remained in the account.

A constructive trust in favor of Susanna Wilde will be imposed on the funds in the Banco Popular account. Following the equitable accounting, the additional amount of Peter Wilde's unjust enrichment attributable to the St. Thomas Condominium will be added to the restitution award.

### 4. Loans to STI

STI's balance sheet dated June 30, 2006, lists depreciable assets of $18,615.03, cash of $2,459.75, total liabilities of $151,484.13 (including a loan from the sole shareholder, Peter Wilde, of $147,103.38), and total equity of negative $147,764.35.

Susanna Wilde traced payments from the Citibank Accounts directly to STI in the amount of $135,509.80. She also traced $170,456.48 paid to STI from additional accounts controlled by Peter Wilde and funded by payments from the Citibank Accounts.

15

In total, Susanna Wilde has credibly shown that $305,966.28 in funds from the Citibank Accounts have gone to STI.

A constructive trust in favor of Susanna Wilde will be imposed on all of STI's assets, whose value is far less than the amount of money traced. A constructive trust will also be imposed on STI's obligation to pay $147,103.38 to Peter Wilde, such that STI must now repay the loan to Susanna Wilde.

### 5. Jewelry and cars

Susanna Wilde showed that funds withdrawn by Peter Wilde from the Citibank Accounts were used for the purchase of two cars and several pieces of jewelry. To the extent that a small part of these purchases is not traceable to the Citibank Accounts, the tracing requirements are relaxed. Rogers, 63 N.Y.2d at 586; Martha Graham Sch. and Dance Found., 224 F. Supp. 2d at 611. Therefore a constructive trust in favor of Susanna Wilde will be imposed on the 2004 Dodge two-door sedan, the 2004 Dodge sport utility vehicle, and the seven pieces of jewelry listed in Peter Wilde's homeowner policy for the Virginia Beach Home.

## E. Equitable accounting

"The right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." Palazzo v. Palazzo, 121 A.D.2d 261, 265 (2d Dep't 1986). Upon a showing that plaintiff entrusted property to a fiduciary, the fiduciary is bound to reveal his dealings with that property. Bouley v. Bouley, 19 A.D.3d 1049, 1051 (4th Dep't 2005).

The purpose of an equitable accounting is to require a fiduciary to show what he did with the principal's property. In addition to returning the property, a fiduciary must return any profits generated by the use of the property. Vinlis Constr. Co. v. Roreck, 30 A.D.2d 668, 668 (2d Dep't 1968) (requiring "disgorgement of any benefits or profits received as a result of a fiduciary's breach of the duty of loyalty"), modified on other grounds, 27 N.Y.2d 687, 689 (1970). Disgorgement is not meant to compensate victims, but to prevent wrongdoers from unjustly enriching themselves. SEC v. Cavanaugh, 445 F.3d 105, 117 (2d Cir. 2006). Courts in equity have forced defendants to surrender profits even when those profits exceeded the damage caused to the plaintiff. Id.

An equitable accounting requires two steps. First, upon a showing that an accounting is warranted, an interlocutory decree is issued requiring the fiduciary to make an accounting. Wood v. Cross Props., Inc., 5 A.D.2d 853, 853 (2d Dep't 1958). Once the accounting is made, a second hearing is held to establish the

16

final amounts owed to the principal.  See Nishman v. De Marco, 76 A.D.2d 360, 367 (2d Dep't 1980); Corwin v. Kaufman, 37 A.D.2d 838, 838 (2d Dep't 1971); Conrady v. Buhre, 148 A.D. 776, 777 (2d Dep't 1912).

Peter Wilde breached his fiduciary duty to Susanna Wilde. He must therefore provide an equitable accounting to Susanna Wilde with regard to the Citibank Accounts and the Florida Condominium, as discussed below.

Peter Wilde bears the burden of proof and is presumed to have been unjustly enriched by all transfers and withdrawals unless he can show otherwise.  In re Garson, 17 A.D.3d 243, 243 (1st Dep't 2005) (attorney-in-fact could not produce records proving that cash withdrawals were made on behalf of his incapacitated aunt, and was therefore liable for all withdrawals); Kantor v. Kalnick, 58 A.D.2d 775, 775-76 (1st Dep't 1977); Vinlis Constr., 30 A.D.2d at 668.  Ambiguities will be resolved against Peter Wilde.  Donovan v. Bierwirth, 754 F.2d 1049, 1056 (2d Cir. 1985).

Peter Wilde must provide an accounting to Susanna Wilde with regard to the following items:

**1. Withdrawals before April 12, 1998**

Peter Wilde has admitted that he began his self-dealing withdrawals from the Citibank Accounts on May 21, 1996.  However, Susanna Wilde has only obtained records from April 12, 1998, onward.  Peter Wilde is "'bound to reveal his dealings.'" Bouley, 19 A.D.3d at 1051 (quoting Stevens v. St. Joseph's Hosp., 52 A.D.2d 722, 723 (4th Dep't 1976)).  He must give an accounting of the withdrawals he made from the Citibank Accounts from May 21, 1996, to April 11, 1998.  The accounting must detail the amount of the withdrawals, what the withdrawals were used for, and what benefits accrued to Peter Wilde from that use.

**2. The Florida Condominium**

Peter Wilde rented the Florida Condominium to third parties from May 1, 1996 through May 31, 2000.  He must provide an accounting of the rent he received during that period.

**3. The North Carolina Property and the Virginia Beach Home**

In the accounting, Peter Wilde must provide the purchase price of the North Carolina Property.  According to his admissions, he purchased the North Carolina Property with $172,000 from the sale of the Florida Condominium, plus an unspecified amount taken from the Citibank Accounts.  Once the purchase price is known, it will be possible to calculate how

17

much money from the Citibank Accounts can be traced to the North Carolina Property.

Peter Wilde must also account for the full rent generated by the North Carolina Property. Susanna Wilde has shown that the rental income totalled at least $82,433.12 and that the total may be even greater.

Peter Wilde has admitted that between April 12, 1998 and March 11, 2008, he paid for improvements to his Virginia Beach Home with funds derived directly or indirectly from the Citibank Accounts. Susanna Wilde has shown that between June 27, 2002, and April 12, 2004, Peter Wilde charged to his American Express card a series of purchases at home improvement stores. The total amount of these purchases is $22,952.64. Peter Wilde has admitted that funds from the Citibank Accounts paid for part of these American Express purchases, but he has not provided further detail. In his accounting, Peter Wilde must show what portion of the American Express purchases was made with his own funds. If he fails to make such a showing, the full $22,952.64 will be presumed to have come from the Citibank Accounts. In addition, Peter Wilde must show which American Express purchases benefited the North Carolina Property and which purchases benefited the Virginia Beach Home. The amount paid toward the North Carolina Property will be recovered by Susanna Wilde as part of the constructive trust placed on that property. The amount paid toward the Virginia Beach Home will be added to the equitable lien placed upon that property. Finally, Peter Wilde must account for any additional home improvement expenditures he made from the Citibank Accounts between April 12, 1998 and March 11, 2008.

**4. The St. Thomas Condominium**

Susanna Wilde has shown that funds from the Citibank Accounts were used for at least $27,500 of the $50,000 purchase price of the St. Thomas Condominium. Peter Wilde sold the property for $200,000. He must account for his profits from the sale.

Susanna Wilde has also shown that the St. Thomas Condominium generated at least $22,696.54 in rental proceeds. Peter Wilde must account for the full amount of rental income generated by the St. Thomas Condominium.

**F.  Indispensable party**

Peter Wilde argues that the action should be dismissed with prejudice because Susanna Wilde failed to include Tomás Wilde as an indispensable party. This argument is meritless. Tomás Wilde did not have an interest in the Citibank Accounts, the Florida Condominium, or the outcome of the litigation.

**CONCLUSION**

The foregoing shall constitute my findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a). Peter Wilde is directed to provide Susanna Wilde with an accounting by September 26, 2008.

SO ORDERED.

Date:   New York, New York
        September 11, 2008

                                S/_____
                                   MIRIAM GOLDMAN CEDARBAUM
                                   United States District Judge