UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
SUSANNA FRANK WILDE,                :

            Plaintiff,           :     07 Civ. 0677 (WHP)

      -against-                         :     ORDER

PETER NORMAN WILDE,                 :

            Defendant.           :
------------------------------X

WILLIAM H. PAULEY III, District Judge:

      Senior District Judge Miriam Goldman Cedarbaum conducted a bench trial and issued an Opinion on September 12, 2008 (the "September 12 Opinion"). Following the September 12 Opinion, the action was returned to this Court for any post-trial proceedings. Plaintiff now moves to hold Defendant in contempt for violations of the September 12 Opinion, as well as three Orders of this Court's. Plaintiff also moves for an order requiring Defendant to post a bond to secure Plaintiff's costs on appeal and in this action, and for partial judgment pursuant to Rule 54(b). Because Defendant has withdrawn his appeal, Plaintiff's motion for costs on appeal is moot; Plaintiff also withdraws her motion for costs in this action pursuant to Local Rule 54.2. On December 5, 2008, this Court directed Plaintiff to prepare a proposed final judgment, incorporating the proposed partial judgment. For the following reasons, the Court adopts that proposed final judgment, with certain modifications as set forth in this Order.

I. September 12 Order

      The September 12 Opinion required Defendant to provide an accounting of: (1) the amounts of his withdrawals from Plaintiff's Citibank accounts between May 21, 1996 and

April 11, 1998 and the uses of those withdrawals; (2) the rental income he received from the Florida Condominium between May 1, 1996 and May 31, 2000; (3) the purchase price for the North Carolina Property and rental income generated from that property; (4) the portion of the $22,952.64 charged to his American Express account for home improvement purchases that was paid for with money from Plaintiff's Citibank accounts and the portions that were used to improve the North Carolina and Virginia properties; and (5) profits from the sale of the St. Thomas Condominium and rental income generated from the property. Defendant was to provide the accounting by September 26, 2008. Defendant failed to comply with the September 12 Opinion.

On December 2, 2008, after Plaintiff filed her motion to hold Defendant in contempt, Defendant submitted a declaration purporting to be an accounting, without any supporting documentation. Defendant claims that he lost all his records as a result of a flood in 2004. Because Defendant failed to comply with the September 12 Order, and has a history of failing to comply with this Court's Orders, and because Defendant's declaration is entirely self-serving, this Court draws certain adverse inferences against Defendant and makes the following fidings.

1. Citibank Withdrawals between May 21, 1996 and April 11, 2008

Defendant states that "100% of the money taken from the Citibank account from 1996 to 1998 was for the benefit of the my [sic] father's property. . . ." (Additional Accounting and Facts by Peter N. Wilde dated Dec. 2, 2008 ("Wilde Decl.") ¶ 4D.) However, Defendant offers no evidence in support of this statement. On the other hand, Plaintiff can show that Defendant transferred $179,042 from the Citibank investment account to the Citibank checking account between May 1996 and March 1998. (Letter from Evan W. Gray dated Dec. 8, 2008

2

("Gray Letter") at 2-3.) Plaintiff can also show that between January 1, 1997 and March 31, 1998, Defendant drew checks for his own benefit from the checking account in the same amount that he transferred into the checking account from the investment account. (Gray Letter at 2-3.) Accordingly, this Court finds that Plaintiff is entitled to restitution of $179,042.

### 2. Florida Condominium Rental Income between May 1, 1996 and May 31, 2000

Defendant claims that his realtor does not have rental records for this May 1996 through May 2000, but that his "best recollection" is that the rental income from the Florida Condominium was approximately $800 per month and did not exceed $12,000 for that four year period. (Wilde Decl. ¶ 5C.) Defendant also claims that he incurred $50,660 in expenses related to the Florida Condominium which he paid for with the rental income and by withdrawing from Plaintiff's Citibank account. (Wilde Decl. ¶ 5D.) Plaintiff suggests that the rental value of the Florida Condominium is at least $1,600 and that the rental income should be set at $48,000 ($1,000 per month for 48 months). (Gray Letter at 3.) Plaintiff further argues that Defendant is not entitled to deduct any expenses from the rental income because they were paid for from the Plaintiff's Citibank account and because Defendant fails to provide any documentation of those expenses.

Without any means to determine that the rental value of the Florida Condominium was $1,600 per month or even $1,000 per month, the Court will accept Defendant's sworn statement that it was $800 per month. However, because Defendant fails to provide any evidence that it was only rented for approximately 15 months, the Court finds that the Florida Condominium was rented for 48 months and fixes the rental income at $38,400. Further, because Defendant failed to provide any evidence of expenses relating to maintenance of the Florida Condominium, his argument to deduct expenses from the rental income is rejected.

3

### 3. Purchase price and Rental Income for the North Carolina Property

Defendant asserts that the $172,000 purchase price of the North Carolina Property was paid with $150,000 in proceeds from the sale of the Florida Condominium and $22,000 withdrawn from Plaintiff's Citibank accounts. (Wilde Decl. ¶ 6C.) Plaintiff does not object, and accordingly, the Court accepts Defendant's statement.

As for rental income, Defendant estimates, based on certain statements from his realtor, that the total rental income for the North Carolina Property was $104,844.42. (Wilde Decl. ¶ 6E.) Defendant also claims he incurred $50,200 in expenses related to the North Carolina Property that were paid from Plaintiff's Citibank accounts. (Wilde Decl. ¶ 6H.) Plaintiff accepts Defendant's estimate of rental income, but argues that Defendant is not entitled to deduct any expenses from because they were paid from Plaintiff's Citibank accounts and Defendant offers no documentation substantiating them.

Defendant purchased the North Carolina Property in violation of his fiduciary duties. Moreover, any expenses were paid from Plaintiff's Citibank accounts. Accordingly, this Court declines to deduct any expenses for the North Carolina Property and fixes the amount of the rental income at $104,844.42.

### 4. Home Improvements

Plaintiff established at trial that Defendant used $22,952.64, withdrawn from her Citibank accounts, to pay for certain home improvements. Defendant claims that the entire amount benefited the North Carolina Property not his Virginia Beach Property. Not surprisingly, Defendant offers nothing to support his naked assertion. His claim is particularly self-serving in view of his transfer of the North Carolina Property to Plaintiff because of the September 12 Opinion's imposition of a constructive trust. Therefore, this Court finds that the $22,952.64 was

4

used to improve the Virginia Beach Property. Plaintiff asserts that additional monies were expended on the Virginia Beach Property and urges this Court to fix the amount of home improvements at $45,905.28, nearly twice the amount established at trial. This Court declines the invitation to conduct another hearing and prolong these proceedings. Both sides had more than one full and fair opportunity to present evidence. Accordingly, this Court fixes the home improvement amount at $22,952.64 and adds that amount to the $75,759.74 equitable lien imposed on the Virginia Beach Property in the September 12 Opinion for a total lien of $98,712.38.

5. Rental Income and Profit from Sale of the St. Thomas Property

Defendant states that the profit from the sale of the St. Thomas Property was $120,000, (Wilde Decl. ¶ 7B); Plaintiff submits that it was $123,622.64 based on two checks Defendant received. (Gray Letter at 4.) The Court finds the profit on the sale of the St. Thomas Property was $123,622.64.

Defendant states that rental income did not exceed the $22,696.54 sum Plaintiff established at trial. Defendant also asserts that he incurred $61,100 in expenses to maintain the St. Thomas Property. (Wilde Decl. ¶¶ 7D-E.) Plaintiff counters that the rental income receipts were incomplete; for example, Defendant produced only a few checks for 2003, 2004, 2006, and 2007 and significantly more checks for 2005. (Gray Letter at 4-5.) Therefore, Plaintiff urges that the rental income should be set at $45,393.08, twice the amount established at trial. While it appears that the rental receipts are incomplete, this Court declines to fix an arbitrary amount and instead anchors the rental income to the receipts produced at trial. However, as with the North Carolina Property, this Court disallows any expenses relating to the St. Thomas Property and finds the rental income to be $22,696.54.

II. <u>Interest</u>

Under New York law, in an action for an equitable accounting, prejudgment "interest and the rate and date shall be computed shall be in the court's discretion." N.Y.C.P.L.R. § 5001(a). The New York statutory interest rate is 9% per annum. N.Y.C.P.L.R. § 5004. "[I]nterest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y.C.P.L.R. § 5001(b). The Court may also award compound prejudgment interest "where the defendants acted in bad faith." <u>Audiovisual Publishers, Inc. v. Cenco Inc.</u>, 195 F.3d 93, 97 (2d Cir. 1999). Because this Court finds that the Defendant acted in bad faith and willfully failed to comply with prior Court Orders, prejudgment, compound interest of 9% is appropriate. An award of compound interest is also appropriate because Defendant breached his fiduciary duties and used the Plaintiff's assets for his own benefit.

In view of the number of transactions, calculating the date from which interest should run would be a formidable undertaking that could consume the Court's time as well as counsel's. Given the age of the Plaintiff, this Court concludes that time is of the essence. To cut this Gordian knot and bring an end to this madness in the district court, this Court concludes that interest should be computed from the midpoints of various unlawful activities by Defendant as follows: (1) from September 2, 2000 for the $1,667,584.76 withdrawn from Plaintiff's Citibank accounts between May 21, 1996 and December 16, 2004; (2) from May 17, 1998 for the $38,400 in monetary proceeds from rental of Plaintiff's Florida Condominium from May 1, 1996 to May 31, 2000; (3) from August 27, 2004 for the $104,844.42 in monetary proceeds from rental of the North Carolina Property from June 2000 to the transference of the North Carolina Property to Plaintiff on November 21, 2008; (4) from September 30, 2004 for the $22,696.54 monetary

6

proceeds from rental of the St. Thomas Property from May 2002 through March 2007; and (5) from the sale closing date of March 29, 2007 for the $123,622.64 in profits from the sale of the St. Thomas Property.

III. Other Contempt Issues

In an Order dated September 26, 2008, Defendant was directed to deposit with the Court all monetary proceeds received since December 13, 2007 for rental of the North Carolina Property. Defendant failed to do so, claiming that his financially unable. In Orders dated March 4, 2008 and April 18, 2008 respectively, this Court directed Defendant to produce copies of all statements from any account at a financial institution within one week of his receipt of the statement. Plaintiff claims that Defendant has failed to produce several statements for six different accounts. While Defendant is in contempt of this Court's September 26, 2008 Order and may be in contempt of this Court's March 4 and April 18, 2008 Orders, the Court will not impose additional sanctions in light of the foregoing discussion, which imposes significant sanctions on Defendant for his failure to comply with the September 12 Opinion.

7

CONCLUSION

For the foregoing reasons, the Court adopts the Plaintiff's proposed final judgment, as modified by this Order. Plaintiff is directed to submit a final judgment consistent with this Order. The Clerk of the Court is directed to mark all pending motions as moot and close the case.

Dated: December 30, 2008
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Evan Whitney Gray
Sokolow Carreras, L.L.P.
770 Lexington Avenue
Sixth Floor
New York, NY 10021
*Counsel for Plaintiff*

Carl E. Person, Esq.
Carl E. Person - An Individual Practitioner
325 West 45th Street
Suite 201
New York, NY 10036
*Counsel for Defendant*